UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

AUNHK RA AUNHKHOTEP,            )
                               )
          Plaintiff,           )
                               )
    v.                         )          Case No. 4:23 CV 540 RWS
                               )
OFFICER JOSEPH KOPFENSTEINER,  )
et al.,                        )
                               )
          Defendants.          )

## MEMORANDUM AND ORDER

Plaintiff claims that the police officer defendants violated his rights under the Fourth Amendment when he was detained and his van was searched by a police drug dog.  After due consideration of the issues before the Court on summary judgment,[1] defendants are entitled to judgment as a matter of law for the reasons discussed below.

### Standards Governing Summary Judgment

---

[1] Plaintiff moved for summary judgment.  ECF 49, 88.  Defendants responded, contending that they, not plaintiff, are entitled to judgment as a matter of law.  ECF 58, 62.  Plaintiff filed a reply brief in support of summary judgment, ECF 73, and defendants filed a reply brief in support of their request for summary judgment.  ECF 76.  The Court also ordered the parties to brief the issue of damages.  ECF 87.  Plaintiff filed a brief, but despite being instructed to do so by the Court he submitted no evidence in support of his damages.  ECF 88.  Defendants filed an opposition to plaintiff's brief, ECF 90, but plaintiff filed no reply brief on the issue of damages. The issues are thus fully briefed.

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a), (c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).  I must view the evidence in the light most favorable to the nonmoving party and accord that party the benefit of all reasonable inferences.  *Scott v. Harris,* 550 U.S. 372, 379 (2007).  My function is not to weigh the evidence but to determine whether there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the burden of informing the Court of the basis of its motion and demonstrating the absence of an issue for trial.  *Celotex Corp.*, 477 U.S. at 323.  Once a motion is properly made and supported, the nonmoving party must either proffer evidence in the record that demonstrates a genuine issue of material fact or show that the moving party's proffer does not establish the absence of a genuine dispute.  Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 248; *Conseco Life Ins. Co. v. Williams,* 620 F.3d 902, 910 (8th Cir. 2010); *Howard v. Columbia Pub. Sch. Dist.,* 363 F.3d 797, 800-01 (8th Cir. 2004).  The substantive law determines which facts are critical and which are irrelevant.  *Anderson*, 477 U.S. at 248.  Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.*

In determining a motion for summary judgment, I consider only those facts that can be supported by admissible evidence. Fed. R. Civ. P. 56(c); *Woods v. Wills*, 400 F. Supp. 2d 1145, 1175-76 (E.D. Mo. 2005). Testimony that would not be admissible is ignored. *Shaver v. Independent Stave Co.*, 350 F.3d 716, 723 (8th Cir. 2003); Fed. R. Civ. P. 56(c)(4). Accordingly, speculation, personal opinion, and legal conclusions are not "facts" upon which a party may rely for summary judgment purposes. *See Clark v. St. Louis Public Schools*, Case No. 4:05CV1299 SNL, 2006 WL 208600, at *1 (E.D. Mo. Jan. 25, 2006).

"The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252; *Davidson & Associates v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005). "Simply referencing the complaint, or alleging that a fact is otherwise, is insufficient to show there is a genuine issue for trial." *Kountze ex rel. Hitchcock Foundation v. Gaines*, 536 F.3d 813, 818 (8th Cir. 2008). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Under these standards I review the facts of this case.

## Undisputed Facts

On the morning of April 6, 2023, police officers Joseph Kopfensteiner and Logan Priddy received a tip from St. Louis Metropolitan Police Detective Justin Robben that a blue van with license plate ZA5BK was involved in an unsolved homicide that occurred near Bacon and Montgomery Streets in the City of St. Louis.[2]  Detective Robben also provided the location of van, which was near North Market and Coleman Streets.  Kopfensteiner and Priddy went to a spot near that location, where they observed a blue van with that license plate number parked on the street.  Kopfensteiner and Priddy knew the location to be an area where there was high narcotics traffic and criminal activity.

While Kopfensteiner and Priddy were watching the van, they observed a Black male (later identified as plaintiff) shake hands with numerous people in a way that appeared to them, based on their experience, to be hand-to-hand drug transactions.  Kopfensteiner and Priddy accordingly activated their lights and siren and pulled up behind the van.

---

[2] In his "Motion for Order Deeming Tip Inadmissible Hearsay Statement," plaintiff argues – without evidence – that Detective Robben fabricated the tip because plaintiff had earlier refused to assist him in the homicide investigation.  ECF 75.  Even if true, it is not material to the resolution of the instant motion since plaintiff does not contend – and there is no evidence to suggest – that Kopfensteiner and Priddy knew the tip was fabricated or acted upon it to retaliate against plaintiff.  Moreover, as the uncontroverted evidence demonstrates, Kopfensteiner and Priddy did not stop, search and investigate plaintiff based on the tip.  Rather, they did so based on their own observations of plaintiff which led them to believe he was selling drugs.  Finally, evidence of the tip is not hearsay because it is not being offered by defendants to demonstrate its truth.  Instead, it is being offered to show proof of effect on the listener.  For these reasons, plaintiff's motion [ECF 75]  is denied.

Kopfensteiner and Priddy approached the van on foot.  Plaintiff was in the driver seat.  Defendants do not dispute plaintiff's statement that they "grabbed plaintiff's hands and arms and removed plaintiff from the driver seat of the van." ECF 58-1 at 1-2.  However, Kopfensteiner and Priddy both aver that plaintiff voluntarily complied with their request to exit the van.  Plaintiff exited the van. ECF 58-2 at 2, 58-3 at 2.  Plaintiff appeared irate, angry, and nervous and asked why he was being detained.  Plaintiff refused to answer Kopfensteiner and Priddy's questions about was he was doing before they arrived.  The conversation lasted about one to two minutes.

Because there were at least four other people congregating at the van, Kopfensteiner and Priddy told plaintiff that he would be placed in handcuffs pending their investigation.  ECF 58-2 at 2.  Plaintiff was then read his *Miranda* rights.  *Id.*  After being handcuffed, Kopfensteiner patted plaintiff down for dangerous weapons and found none.  *Id.*  However, during the pat down Kopfensteiner felt a "hard-flat object that was a few inches long and a few inches wide" inside plaintiff's pocket.  *Id.*  Kopfensteiner pulled the object from plaintiff's pocket and discovered that it was plaintiff's identification card.  *Id.* He read the name to Priddy, who then checked plaintiff's name for warrants with the real-time crime center.  *Id.*; ECF 58-3 at 3.  Plaintiff's name came back with "multiple alias names."  ECF 58-2 at 3.  Plaintiff's license plate was also checked

and found to be expired. *Id.*; ECF 58-3 at 3. Plaintiff admitted that it was "not good." *Id.*; ECF 58-2 at 3.

In connection with the summary judgment motions, plaintiff produced cell phone video footage of the stop recorded by witness Geneva Taylor. ECF 50-1 at 1. This video footage appears in the record as ECF 86 and has been reviewed by the Court. The video footage begins after plaintiff has been handcuffed and is standing outside the van. It does not show plaintiff being patted down or the discovery of his driver's license. Instead, it begins with the officers verifying plaintiff's name and asking him about his expired plates. Plaintiff admits his plates are expired but states that he thought it was okay because he was not driving the van. On the video footage, plaintiff is asked where the vehicle identification number (VIN) number is located for the van. One of the officers notes that there is no VIN number visible on the exterior of the vehicle and asks him if it is located on the interior of one of the van doors. Kopfensteiner then asks if the VIN number is on the driver or passenger side door. Plaintiff indicates the driver's side door, so Kopfensteiner then opens the driver's side door to retrieve the VIN number. The door is left open for the duration of the video, which is only about six minutes long.[3] Despite the video footage, Kopfensteiner and Priddy both aver that plaintiff

---

[3] Although plaintiff argues in his brief that defendants said they were leaving his door open to conduct a K-9 search inside the van, he provides no evidentiary support for this assertion. ECF 73 at 13. No such statement can be heard on the video footage. Plaintiff did not provide his own

left the driver's side door of the van open when he stepped out.  ECF 62-1 at 2; 62-2 at 2.

Plaintiff did not consent to a search of the interior of his van.  Kopfensteiner and Priddy then called for a K-9 Handler to do an exterior dog sniff of the van.  K-9 Handler David Wilson and K-9 Noco responded to the call and arrived at the scene about 20-30 minutes later because they were across town.  Upon arrival, Wilson could only see the passenger side of the van and did not realize the driver side door was open.  ECF 58-4 at 2.  Wilson and Noco approached the passenger side of the van and Wilson gave Noco his command to conduct an open-air sniff of the exterior of the van.  *Id.*  While on his leash, Noco began sniffing the exterior of the van, walking around to the driver's side as he did so.  *Id.*  Wilson avers that without being commanded to do so, Noco jumped into the van through the open driver's door.  *Id.*  Wilson does not aver how long Noco was in the van or what he

---

testimony in support of, or in opposition to, summary judgment, and plaintiff's pro se brief is not admissible evidence this Court may consider when ruling on summary judgment motions. Plaintiff's brief is not testimony just because it was filed by plaintiff on his own behalf, nor was it filed under penalty of perjury and verified as true and correct.  *See* 28 U.S.C. § 1746 (statement not made under oath could be considered admissible evidence if signed "under penalty of perjury" and verified as true and correct).  The Court cannot liberally construe inadmissible evidence as admissible evidence just because plaintiff is representing himself in this action, nor is this "unnecessarily hyper-technical and overly harsh on a party who unintentionally fails to make certain that all technical, non-substantive requirements of execution are satisfied."  *Pfeil v. Rogers*, 757 F.2d 850, 859 (8th Cir. 1985).  Requiring admissible evidence to be submitted at the summary judgment stage is not a "technical, non-substantive" requirement.

Finally, contrary to plaintiff's argument, none of the witness affidavits include this alleged statement from defendants.

did while he was inside.  *Id.*   The cell phone video footage provided by plaintiff does not show the arrival of Wilson and Noco or the subsequent search of the van. However, on the footage plaintiff tells Kopfensteiner that he needs probable cause to call for a drug dog and search his van.  Kopfensteiner responds that he does not need probable cause for an exterior dog sniff of the van but if he alerts on the van then he has probable cause to search inside it.

In their amended opposition to plaintiff's motion for summary judgment, defendants admit that Noco was inside the van, ECF 62 at 5, but still deny that the interior of the van was searched.  ECF 58-1 at 3.  Plaintiff has provided affidavits from people congregating at his van during the search.  ECF 50-1.  Using virtually identical language, these witnesses aver that that Wilson "guided" or "put" Noco inside the van, and that the interior search of the van lasted 5-10 minutes.  *Id.* Noco did not alert to any illegal substances, so plaintiff was immediately uncuffed and released.  At some point during the investigation, Sergeant Michael Stewart arrived at the scene.  He did not witness the entire incident and he did not engage with the plaintiff.

Defendants offer no testimony as to the length of their encounter with plaintiff.  Plaintiff's witnesses testified that Kopfensteiner and Priddy called for a search dog after about 20 minutes, that the search dog arrived after about 45

minutes, and that the entire encounter between plaintiff and the defendants lasted about an hour.  ECF 50-1.

Plaintiff brings this 42 U.S.C. § 1983 complaint pro se, alleging that Kopfensteiner, Priddy, and Wilson violated his Fourth Amendment rights during this encounter.  Plaintiff also alleges that these defendants conspired with Stewart to violate his rights.  Defendants contend that they are entitled to qualified immunity on all counts of the complaint, while plaintiff insists that he is entitled to summary judgment on his claims.

<u>Discussion</u>

Plaintiff brings suit under 42 U.S.C. § 1983, which "requires a causal link to, and direct responsibility for, the alleged deprivation of rights."  *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (cleaned up).  "Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each defendant, through his own individual actions, has violated the Constitution."  *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up).  To the extent plaintiff's pro se complaint attempts to hold a defendant responsible for the conduct of another, it is dismissed with prejudice as violative of this rule.  For this reason, the Court considers each defendant's actions individually.

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established constitutional rights of

which a reasonable person would have known." *Hernandez v. Mesa*, 582 U.S. 548, 554 (2017) (cleaned up).  To determine whether a defendant is entitled to qualified immunity, the Court must "conduct a two-step inquiry: (1) whether the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) whether the right was clearly established at the time of the deprivation." *Solomon v. Petray*, 795 F.3d 777, 786 (8th Cir. 2015) (cleaned up).  A right is clearly established if "the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right. While prior cases need not have expressly determined that the action in question is unlawful, in the light of pre-existing law the unlawfulness must be apparent." *Presson v. Reed,* 65 F.4th 357, 365 (8th Cir. 2023) (cleaned up); *Dundon v. Kirchmeier*, 85 F.4th 1250, 1255 (8th Cir. 2023) (plaintiff need not identify "a case directly on point," but controlling authority or a robust consensus of persuasive authority must put the constitutional question "beyond debate.") (cleaned up).  The Court has discretion to choose which of the two elements to address first.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).

Plaintiff first claims that he was unconstitutionally seized by

Kopfensteiner and Priddy in violation of the Fourth Amendment when he was initially detained.

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV.  Police officers violate the Fourth Amendment when they conduct an arrest without a warrant or probable cause.  *Baribeau v. City of Minneapolis*, 596 F.3d 465, 478 (8th Cir. 2010).  However, to effect a temporary investigative detention (known as a *Terry* stop), officers need only reasonable suspicion based on the totality of the circumstances that criminal activity may be afoot.  *See Illinois v. Wardlow*, 528 U.S. 119, 123 (2000); *De La Rosa v. White*, 852 F.3d 740, 744 (8th Cir. 2017).  While "[r]easonable suspicion is a lower threshold than probable cause," *United States v. Carpenter*, 462 F.3d 981, 986 (8th Cir. 2006), it requires "at least some minimal level of objective justification."  *De La Rosa*, 852 F.3d at 744 (cleaned up); *see also Terry v. Ohio*, 392 U.S. 1, 27 (1968) (defining reasonable suspicion as something more than an "inchoate and unparticularized suspicion or hunch") (cleaned up).  The likelihood of criminal activity necessary to establish reasonable suspicion "falls considerably short of that necessary to satisfy a preponderance of the evidence standard."  *United States v. Arvizu*, 534 U.S. 266, 274 (2002) (cleaned up).

To determine if officers have reasonable suspicion, courts "look at the totality of the circumstances, allowing officers to draw on their experience and

training." *United States v. Lawhorn*, 735 F.3d 817, 820 (8th Cir. 2013) (cleaned up); *see also Arvizu*, 534 U.S. at 273; *Clinton v. Garrett*, 49 F.4th 1132, 1140 (8th 2022) (courts "allow officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.") (cleaned up). "When evaluating whether reasonable suspicion for a *Terry* stop exists, we view the officers' observations as a whole, rather than as discrete and disconnected occurrences." *United States v. Hightower*, 716 F.3d 1117, 1121 (8th Cir. 2013) (cleaned up).  Reasonable suspicion does not require the subject of the stop to be actively engaged in a crime.  *United States v. Fields*, 832 F.3d 831, 834 (8th Cir. 2016).

For his part, plaintiff argues that Kopfensteiner and Priddy did not have reasonable suspicion to stop and question him because Detective Robben's tip that his van was involved in an unsolved homicide was unreliable.  He also argues that his demeanor when confronted by Kopfensteiner and Priddy cannot be considered in the analysis.  Plaintiff is mistaken on both points.

Although Kopfensteiner and Priddy were surveilling plaintiff's van because of Detective Robben's tip, the officers stopped plaintiff because they observed him engage in what appeared to them, based upon their experience, to be hand-to-hand drug transactions with a number of people who were congregating at his van in an

12

area known for high narcotics traffic and criminal activity. Plaintiff also admits that, when approached by Kopfensteiner and Priddy, he immediately became irate, angry, and nervous and asked why he was being detained. Plaintiff also refused to answer Kopfensteiner and Priddy's questions about what he was doing before they arrived.

At that point, Kopfensteiner and Priddy had "a particularized and objective basis" to detain plaintiff. *See Waters v. Madson*, 921 F.3d 725, 736-37 (8th Cir. 2019) (citing *Thomas v. Dickel*, 213 F.3d 1023, 1025 (8th Cir. 2000) and *Ornelas v. United States,* 517 U.S. 690, 696 (1996)); *United States v. Bustos-Torres*, 396 F.3d 935, 942-43 (8th Cir. 2005) (officer conducting unrelated surveillance in high drug traffic area who witnessed defendant engage in what he believed to be a hand-to-hand drug transaction had probable cause to stop vehicle containing defendant and others not present at the suspected drug deal); *United States v. Bailey*, 417 F.3d 873, 877-78 (8th Cir. 2005) (nervousness and evasiveness contribute to "a reasonable and particularized suspicion that criminal activity may be afoot.") (cleaned up). Because the officers possessed specific, articulable facts that led them to suspect plaintiff might be engaged in criminal activity, the Court concludes that, under the totality of the circumstances, Kopfensteiner and Priddy had reasonable suspicion to detain plaintiff. *See Waters*, 921 F.3d at 737; *Bustos-Torres*, 396 F.3d at 943.

Having concluded that Kopfensteiner and Priddy had reasonable suspicion to detain plaintiff, they have qualified immunity on plaintiff's claim that his detention violated the Fourth Amendment. However, the Court must next determine whether that detention became a de facto arrest.

Even if the investigatory stop itself is reasonably supported, the manner of the stop "may nonetheless violate the Fourth Amendment if it is excessively intrusive in its scope or manner of execution." *El-Ghazzawy v. Berthiaume*, 636 F.3d 452, 457 (8th Cir. 2011) (cleaned up). "A *Terry* stop may become an arrest, requiring probable cause, if the stop lasts for an unreasonably long time or if officers use unreasonable force." *United States v. Newell*, 596 F.3d 876, 879 (8th Cir. 2010) (cleaned up). While officers must use "the least intrusive means of detention and investigation" reasonably necessary to conduct the stop, *United States v. Navarrete-Barron*, 192 F.3d 786, 790 (8th Cir. 1999) (cleaned up), they are permitted to "take any measures that are reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *United States v. Sanford*, 813 F.3d 708, 713 (8th Cir. 2016) (cleaned up). "When officers are presented with serious danger in the course of carrying out an investigative detention, they may brandish weapons or even constrain the suspect with handcuffs in order to control the scene and protect their safety." *United States v. Fisher,* 364 F.3d 970, 973 (8th Cir. 2004) (cleaned up). In discerning whether

14

an officer's actions meet the Fourth Amendment's standard of reasonableness, "the issue is whether the officer has an objectively reasonable concern for officer safety or suspicion of danger." *Williams v. Decker,* 767 F.3d 734, 740 (8th Cir. 2014) (cleaned up).

Plaintiff contends that he was arrested because he was handcuffed by Kopfensteiner. Not so, as an investigatory stop is not transformed into an arrest simply by an officer's decision to handcuff a suspect. *Waters*, 921 F.3d at 738; *Fisher*, 364 F.3d at 973. Viewed as a whole, given the number of people congregating at plaintiff's van, the well-known high crime and drug trafficking area, the officers' observations of what they perceived to be multiple drug transactions, the tip involving an unsolved homicide, and plaintiff's argumentative, evasive, and uncooperative behavior, Kopfensteiner could reasonably conclude that handcuffing plaintiff was the least intrusive means of maintaining the status quo and protecting the safety of both officers while they investigated. *See Waters*, 921 F.3d at 738; *United States v. Smith*, 645 F.3d 998, 1001 (8th Cir. 2011) (holding that after a suspect, initially cooperative, became agitated and refused permission when an officer asked to search his car, the officer could maintain the status quo by handcuffing the suspect and placing him in the back of a patrol car until a drug-sniffing dog arrived). The Eighth Circuit has "repeatedly held that police officers may reasonably handcuff a suspect and place him in a squad car

15

during the course of a *Terry* stop in order to protect their safety and maintain the status quo." *Id.* at 1002. The placement of plaintiff in handcuffs did not transform plaintiff's detention into an arrest, and Kopfensteiner is entitled to qualified immunity on plaintiff's claim that his placement in handcuffs violated his Fourth Amendment rights.

Plaintiff next argues that Kopfensteiner did not have the authority to conduct a pat-down search of him or remove his driver's license from his pocket during the search. Again, plaintiff is mistaken. "During a *Terry* stop, when an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, the officer may conduct a pat-down search to determine whether the person is in fact carrying a weapon." *Bustos-Torres*, 396 F.3d at 943 (citing *Terry*, 392 U.S. at 24). "Because weapons and violence are frequently associated with drug transactions, it is reasonable for an officer to believe a person may be armed and dangerous when the person is suspected of being involved in a drug transaction." *Id.* Given that plaintiff was detained because he was suspected of being involved in drug activity and under the circumstances present at the time (namely, plaintiff's agitation and refusal to answer questions when combined with the number of people congregating at plaintiff's van as well as its location in a well-known high

crime and drug trafficking area), it was reasonable for Kopfensteiner to conduct a pat-down search of plaintiff to look for weapons.

As for the subsequent removal of plaintiff's license from his pocket, the Eighth Circuit has held that it is objectively reasonable for an officer conducting a pat-down search for weapons during a *Terry* stop to remove a "four-inch long and three-inch wide hard object" from a suspect's pocket to remove the object and inspect it to make sure that it was not a weapon or concealing a weapon. *United States v. Muhammad*, 604 F.3d 1022, 1027 (8th Cir. 2010). Here, too, as in *Muhammad*, during the course of the pat-down search for weapons Kopfensteiner also felt a hard flat object that was a few inches long and few inches wide. Under these circumstances, Kopfensteiner did not violate the Fourth Amendment or extend the pat-down search beyond the bounds of the *Terry* stop by removing the license from plaintiff's pocket for inspection.

Although it is less than clear whether plaintiff is claiming that checking his name for warrants and his license plates violated his Fourth Amendment rights, it was permissible for the officers to complete routine tasks related to his detention, including running a computerized check of the vehicle's registration and the driver's license and criminal history. *See United States v. Ovando-Garzo*, 752 F.3d 1161, 1163 (8th Cir. 2014). This rule applies even though plaintiff was not driving his vehicle at the time of the stop. *See Watson v. City of Ferguson,*

17

*Missouri*, Case No. 4:17CV2187 JCH, 2022 WL 16569365, at *4-5 (E.D. Mo. Sept. 26, 2022), rev'd on other grounds, *Watson v. Boyd*, 119 F.4th 539 (8th Cir. 2024).

Plaintiff also argues that his detention was unreasonably delayed when Kopfensteiner and Priddy called for a K-9 officer and drug sniffing dog. Here, the officers called immediately for a drug detection dog to sniff the exterior of the van, who took about twenty to thirty minutes to arrive due to traffic. ECF 62-1 at 3; 62-2 at 3. But "to establish an unreasonably prolonged detention, the complaining party must show that the officer detained him beyond the amount of time otherwise justified by the purpose of the stop and did so without reasonable suspicion." *Pollreis v. Marzolf*, 9 F.4th 737, 744 (8th Cir. 2021) (cleaned up). Given that the purpose of the stop was suspicion of drug-trafficking activity, the Court concludes that under the totality of the circumstances presented the officers were justified in taking the amount of time needed to accomplish that task, namely calling for an open air sniff of the van by the nearest available drug-detection dog. This twenty to thirty minute delay was permissible given that "an officer may conduct an investigation reasonably related to the scope of a lawful stop." *United States v. Flores*, 474 F.3d 1100, 1103 (8th Cir. 2007); *United States v. Bloomfield*, 40 F.3d 910, 917 (8th Cir. 1994) (citing *United States v. Sharpe*, 470 U.S. 675, 686-88 (1985) and noting that the United States Supreme Court has held that a twenty-

minute detention was reasonable).   The undisputed evidence demonstrates that the officers acted diligently in pursuit of their investigation and immediately called for a drug-detection dog, and the delay was not excessive under the circumstances. *See United States v. Donnelly,* 475 F.3d 946, 953-54 (8th Cir. 2007) (holding that a fifty-nine minute detention to wait for a drug dog was reasonable); *United States v. White,* 42 F.3d 457, 460 (8th Cir.1994) (determining that it was reasonable for an officer to detain a truck for eighty minutes while awaiting the arrival of a drug dog where the officer "acted diligently to obtain the dog, and the delay was caused only by the remote location of the closest available dog.").

Viewing Kopfensteiner and Priddy's actions in the context of the totality of the circumstances, *see Waters*, 921 F.3d at 738, the Court concludes that it was reasonable for the officers to handcuff and frisk plaintiff and detain him while awaiting the arrival of the canine officer and drug-sniffing dog.  Officers Kopfensteiner and Priddy are therefore entitled to qualified immunity on plaintiff's Fourth Amendment claims arising out of these events.

As for plaintiff's claim regarding Wilson's search of his van, in his reply brief plaintiff concedes that he "does not assert a claim that the exterior dog search around the outside of [his] van constituted an illegal search."  ECF 73 at 12. Instead, plaintiff argues that the search of the interior of his van by Noco the drug

dog constituted an illegal search in violation of his Fourth Amendment rights.[4]

Wilson, Noco's handler, admits that "Noco jumped into the front driver's seat [of

the van]," but he contends that Noco did so "with no command."  ECF 62-3 at 3.

Plaintiff's witnesses, however, tell a different story.  They aver that Wilson

"guided" or "put" Noco inside the van, and that Noco's interior search of the van

lasted 5-10 minutes.  ECF 50-1.   There is no dispute that Noco did not alert on the

van (either during the exterior sniff or after being inside it), and defendants do not

argue that they had probable cause to search the interior of the van.  Therefore, "at

best" Noco performed an unintentional, "instinctive" sniff of the interior of the

van, and at worst he was directed to do so by Wilson in the absence of probable

cause.

        The Fourth Amendment protects persons against unreasonable searches and

seizures.  U.S. Const. amend. IV.  Warrantless searches are *per se* unreasonable,

with a few well-established exceptions.  *United States v. Kennedy*, 427 F.3d 1136,

1140 (8th Cir. 2005).  "The so-called 'automobile exception' permits police to

conduct a warrantless search of an automobile if, at the time of the search, they

have probable cause to believe that the vehicle contains contraband or other

---

[4] Defendants argue in passing that the scope of the search was reasonable because "the driver's door was left open by the plaintiff."  ECF 62 at 21.  The Court is not obligated to credit this assertion given the video evidence showing the driver's side door was closed after plaintiff exited the van and was handcuffed and subsequently opened by Kopfensteiner to retrieve the VIN number.

evidence of a crime." *Id.* at 1140-41.  "Probable cause is determined by the totality of the circumstances, and exists when the facts are sufficient for a reasonable person to believe that contraband or evidence of a crime will be found in the place to be searched." *United States v. Martinez*, 78 F.3d 399, 401 (8th Cir. 1996) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983) and *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995)).  If probable cause justifies the search of a vehicle, then it permits the search of every part of the vehicle and its contents that may conceal the object of the search.  *United States v. Olivera-Mendez*, 484 F.3d 505, 512 (8th Cir. 2007) (citing *United States v. Roos*, 456 U.S. 798, 825 (1982)).  With respect to canine searches of vehicles during traffic stops, in *United States v. Lyons*, 486 F.3d 367, 373 (8th Cir. 2007), the Eighth Circuit Court of Appeals held: "Absent police misconduct, the instinctive actions of a trained canine do not violate the Fourth Amendment."

Although *Lyons* has never been overruled, the Eighth Circuit called the *Lyons* decision into question in *United States v. Pulido-Ayala*, 892 F.3d 315 (8th Cir. 2018).  In *Pulido-Ayala*, the Eighth Circuit stated that "[a] drug dog is an instrumentality of the police, and the actions of 'an instrument or agent' of the government normally are governed by the Fourth Amendment."  892 F.3d at 318 (cleaned up).  The Eighth Circuit then emphasized the important distinction between cases where the government has probable cause to search a vehicle *before*

21

a dog enters the interior of a vehicle, based on the dog's strong reactions while

outside the vehicle, and cases where the dog gives no strong reaction or final

indication until *after* entering the interior of the vehicle.  *Id.* at 319-20.  The Eighth

Circuit stated that "there is reason to doubt" whether the subjective intent of an

officer remained dispositive with respect to determining whether a canine's

unintentional search of the interior of vehicle violated the Fourth Amendment

given that "the Supreme Court has emphasized that with two limited exceptions for

special-needs and administrative searches, the subjective intent of police officers is

almost always irrelevant to whether an action violates the Fourth Amendment."  *Id.*

at 319 (cleaned up).

Since the Eighth Circuit's pronouncement in *Pulido-Ayala,* the district court

of the Northern District of Iowa has concluded that a canine's "instinctive actions"

in searching the interior of a vehicle in the absence of a probable cause constituted

a warrantless, unreasonable search in violation of the Fourth Amendment.  *See*

*United States v. Buescher*, 2023 WL 5950124, at *7 (N.D. Iowa Sept. 12, 2023);

*United States v. Handley*, 2024 WL 1536750, at *6–7 (N.D. Iowa, Apr. 9, 2024).

That the Eighth Circuit has stated "there is reason to doubt" whether the holding of

*Lyons* remains viable (and a district court has subsequently decided that it does

not) is not dispositive when deciding the issue of qualified immunity, given that

22

"the unlawfulness must be apparent" "in the light of pre-existing law." *Presson v. Reed,* 65 F.4th 357, 365 (8th Cir. 2023).

However, I need not decide this issue because plaintiff's unreasonable search claims fail in the absence of any actual, compensable injury stemming from the interior search of his van. A plaintiff seeking damages under § 1983 for an unreasonable search must allege (1) an unlawful search and (2) an "actual, compensable injury," *Heck v. Humphrey*, 512 U.S. 477, 487 n.7 (1994), because "the abstract value of a constitutional right may not form the basis for § 1983 damages." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 (1986).

In this case, plaintiff filed an unverified complaint demanding $1,000,000 in compensatory damages, $3,000,000 in punitive damages, and $1,000,000 in emotional damages. ECF 1 at 12. Plaintiff's complaint contains no alternative prayer for nominal damages. Although plaintiff's demand respecting damages was unsupported by any factual allegations, defendants did not seek dismissal of the complaint for failure to state a claim. Therefore, this Court did not have occasion to consider whether plaintiff had suffered any compensable injury resulting from the interior search of his van until plaintiff moved for summary judgment on his claims. Notably, plaintiff did not seek partial summary judgment on the issue of liability only but instead prayed this Court award him judgment on his claims.

ECF 49.  Plaintiff's motion, however, contained no evidence or argument with respect to damages.  ECF 49, 50.

Because plaintiff is proceeding pro se, on October 29, 2024, the Court ordered plaintiff to supplement his motion with appropriate, admissible evidence of his damages respecting each of his claims.  ECF 87.  Plaintiff was also warned that, in accordance with Fed. R. Civ. P. 56(f), the Court may grant judgment independent of a summary judgment motion on the issue of damages.

Plaintiff responded to the Court's October 29, 2024, Order by providing only a brief respecting damages.  ECF 88.  Although signed by plaintiff as a pro se litigant, the brief is not verified and is not evidence.  Plaintiff submitted no evidence, such as Rule 26 disclosures or an affidavit, to support his argument that he suffered "embarrassment and emotional damage" from the search of his van.  ECF 88 at 5.[5]  Again, in consideration of plaintiff's pro se status, the Court immediately issued an Order addressing plaintiff's submission, pointing out that his brief was not admissible evidence and that plaintiff must submit admissible evidence of damages to support each of his claims.  ECF 89.  Despite this Order, plaintiff submitted no evidence respecting his damages, and he filed no additional

---

[5] Plaintiff admits he was not physically injured during the encounter, and he was not charged with a crime.

brief on damages, either.  None of plaintiff's briefing includes an alternative request for nominal damages.

After ample opportunity to do so and despite seeking summary judgment, plaintiff has failed to provide any admissible evidence of damages in connection with the interior search of his van.  As such, his unreasonable search claims fail as a matter of law.  *See Waters*, 921 F.3d at 740–41 (citing *Miller v. Albright*, 657 F.3d 733, 738 (8th Cir. 2011) and affirming dismissal of unreasonable search claim for failure to allege compensable injury).  And while a Fourth Amendment unreasonable search claim can support an award of nominal damages in some cases, plaintiff waived his right to request such damages here by failing to plead or otherwise request them despite being given *two* separate opportunities by the Court to do so and notice that the Court could grant summary judgment on the issue of damages.  *See id.* at 740 n.8.  Accordingly, defendants are entitled to summary judgment on plaintiff's claims that the interior search of his van violated his Fourth Amendment rights.[6]

---

[6] Summary judgment is additionally appropriate as to Priddy and Stewart as they did not personally participate in the search of the van.  Plaintiff's allegation in Count IV that they "failed to intervene" to stop the unconstitutional search of his van is insufficient as a matter of law to demonstrate personal liability on the part of these officers as the Eighth Circuit has declined to extend a duty to intervene to prevent constitutional violations, other than for violations of excessive force.  *Hess v. Ables*, 714 F.3d 1048, 1052 (8th Cir. 2013) ("As an initial matter, we recently held that, outside of the excessive force context, there is no clearly established law regarding a duty to intervene to prevent constitutional violations."); *see also Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012) ("A law enforcement officer who knows another officer is using excessive force has a duty to intervene . . . . We have not recognized a duty to intervene to

Plaintiff attempts to hold Stewart liable as a supervisor for the actions of his subordinates Kopfensteiner and Priddy.[7]   In § 1983 actions, however, a supervisor is liable only for his own misconduct and may not be held vicariously liable for the constitutional violations of a subordinate. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Saylor v. Nebraska*, 812 F.3d 637, 644-45 (8th Cir. 2016).  In the absence of any constitutional violation in this case, Stewart is entitled to summary judgment on all claims of supervisory liability raised against him. *Johnson v. City of Ferguson, Missouri*, 926 F.3d 504, 507 (8th Cir. 2019).

Finally, plaintiff alleges that the defendants conspired to violate his constitutional rights under § 1983.  "There can be no civil conspiracy without an underlying constitutional violation." *Wolk v. City of Brooklyn Center*, 107 F.4th 854, 860 (8th Cir. 2024).  In the absence of any underlying constitutional violation, plaintiff's civil conspiracy claims fail as a matter of law.  *Id.*  Moreover, plaintiff presents no admissible evidence to show that the officers reached an agreement to violate any of his constitutional rights.   A conspiracy claim requires specific facts tending to show a "meeting of the minds" among the alleged conspirators.  *Murray*

---

prevent other constitutional violations.").  Because there is no clearly established law regarding a law enforcement officer's duty to intervene outside of the excessive force context, Priddy and Stewart are entitled to qualified immunity on plaintiff's claim for failure to intervene in an unreasonable vehicle search.  *See Kavanaugh v. Edwards*, Case No. 4:19CV3256 MTS, 2023 WL 2078534, at *3 (E.D. Mo. Feb. 17, 2023).

[7] Stewart was apparently not Wilson's supervisor.

*v. Lene,* 595 F.3d 868, 870 (8th Cir. 2010).  Plaintiff offers no evidence of such a meeting of the minds, only his speculation that "it was crystal clear from all defendants' thinking that there was a meeting of the mind to achieve the aim of violating plaintiff's 4th amendment rights."  ECF 73.  But speculation supported by nothing more than the officers' mere presence at the scene is insufficient as a matter of law to demonstrate a conspiracy claim as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motions for summary judgment [49, 88] are denied, defendants shall have summary judgment on plaintiff's complaint, and plaintiff's complaint is dismissed with prejudice.

**IT IS FURTHER ORDERED** that plaintiff's motion for order deeming tip inadmissible hearsay [75] is denied.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 7th day of January, 2025.